OPINION
Defendant-appellant, Shane A. Martin, appeals from his conviction for aggravated burglary, kidnapping, and rape.
Appellant's conviction stems from an incident that occurred on February 17, 1997. Appellant and the victim, Rebecca Riley, testified to two distinct versions of what happened the night of the incident. Riley testified that on the evening of February 17, 1997, she and her daughter, Summer, went into West Coast Video store in West Chester, Ohio, to rent a movie. Riley testified that appellant helped her to find the movie she wanted and that when she purchased the video, appellant accessed Riley's personal information from her membership information. Appellant remarked that he knew where Riley's house was and that he used to know who lived there. Riley completed the sales transaction and went to her sister's house to watch the movie. Riley testified that she and Summer returned home and went to bed about 10:00 p.m. Summer, then three years old, slept in the same bed as Riley. Riley shared the apartment with her cousin, Eric Maguire, and his girlfriend, Mindy Murvay. Maguire and Murvay were home and in their bedroom at the time of the incident.
Riley testified that at approximately 2:00 a.m., she awoke to see someone standing over her with a knife and threatening Summer's safety if she did not comply with his orders. Riley testified that she was forced out of the apartment in her pajamas and socks and forced into a car by appellant. Riley stated that appellant stopped the car several times, once to buy a cigarette lighter, once to allegedly make a telephone call, and once to buy soft drinks. At no time did Riley attempt to escape, claiming that she was afraid if she tried to escape, appellant would return to her apartment and harm her daughter. Riley stated that appellant then drove with her to a school parking lot where she was forced to perform fellatio, she was forced to submit to cunnilingus, and then she was vaginally raped by appellant.
After the completion of the rapes, appellant exited the car, urinated, and then took Riley back to her apartment. When they arrived at Riley's apartment, appellant realized that he had left his hat inside the apartment. Appellant asked Riley to retrieve his hat. Riley stated that she retrieved appellant's hat because "I wanted him to leave. I didn't want him to come back in and get it." After appellant left, Riley re-entered the apartment and began to scream and cry, waking her roommates.
The police were called and Officer Jeff McDaniel was dispatched shortly after 4:00 a.m. While on route to Riley's apartment, Officer McDaniel encountered appellant walking along a set of railroad tracks not far from Riley's house. Officer McDaniel, who was familiar with appellant, stopped appellant and asked him where he was headed at four o'clock in the morning. Appellant indicated that he was on his way to his friend's house in a nearby trailer park. Officer McDaniel did not detain appellant at that time and proceeded to Riley's apartment. Upon his arrival at Riley's apartment, McDaniel's attention was brought to a Cincinnati Bengals Starter jacket, which Riley and her roommates alleged belonged to the attacker. Officer McDaniel recognized the jacket as being similar to a jacket owned by appellant and returned to the railroad tracks to question appellant. Appellant was arrested and taken into police custody.
Appellant testified at his trial, alleging that Riley invited him to "come over sometime" during their interaction at the video store. Appellant contends that he arrived at Riley's apartment at approximately 2:00 a.m., and when he knocked on the door he was admitted into the kitchen area by Riley. Appellant claimed that he removed his coat and his hat, and that he and Riley decided to go to the Waffle House to get something to eat. Appellant further claimed that the car ride and any sexual contact were consensual. Appellant testified that after Riley retrieved his hat, he indicated that he would call her the next day, to which she responded "okay."
Appellant was indicted on seven counts: Count 1, aggravated burglary (threat of harm) in violation of R.C. 2911.11(A)(1); Count 2, aggravated burglary (deadly weapon) in violation of R.C.2911.11(A)(2); Count 3, kidnapping in violation of R.C.2905.01(A)(4); and Counts 4, 5, 6, and 7, rape (fellatio, cunnilingus, and two counts of vaginal rape) in violation of R.C.2907.02(A)(2). Appellant was tried before a jury and was convicted on Counts 1, 3, and 4 through 7. Appellant was sentenced to six years in the Ohio state penal system for the aggravated burglary and six years for the kidnapping, the sentences to run consecutively, and nine years for each count of rape, the nine years for each count to be served concurrently, but to be served consecutively to the sentences for aggravated burglary and kidnapping. Appellant appeals his conviction and argues three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY FINDING DEFENDANT-APPELLANT GUILTY OF AGGRAVATED BURGLARY, KIDNAPPING, AND FOUR COUNTS OF RAPE, WHEN SUCH FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.
In his first assignment of error, appellant first argues that the evidence introduced at trial was insufficient to convict him and second that his conviction was against the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. The legal concept of sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. In making this determination, the reviewing court must view the evidence in the light most favorable to the prosecution and determine whether any reasonable trier of fact could find that appellant committed the crime beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,273.
A reviewing court will not reverse a verdict where the jury could reasonably conclude from the substantial evidence that the state proved the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169. Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230.
First, appellant was convicted of aggravated robbery in violation of R.C. 2911.11, which requires trespass into an occupied structure with the purpose of committing any criminal act where (1) physical harm is threatened or inflicted, or (2) a deadly weapon is in the control of the assailant. Second, appellant was convicted of kidnapping in violation of R.C. 2905.01(A)(4), which includes removing a person from the place the person is found or restraining the person for the purpose of engaging in sexual activity. Third, appellant was convicted of rape in violation of R.C. 2907.02(A)(1), which provides that "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct is defined in R.C. 2907.01(A) as "vaginal intercourse, between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
Appellant argues that because he was found not guilty of Count 2, aggravated burglary (with a deadly weapon), that the evidence was insufficient to establish that a knife was used in committing the crime. Appellant alleges that without evidence that a knife was used that there was insufficient evidence of any force or threat of force, an element necessary in aggravated robbery, kidnapping and rape.
At trial, Riley testified that appellant forced her to leave her apartment at knife point, travel in a car with appellant to a vacant school parking lot, where he forced her to perform sexual acts. Appellant asserts that Riley's version of events is unbelievable, arguing that because no knife was proven to have been used (Count 2), that it is unlikely that Riley would go with appellant against her will. Thus, the issue is whose version of events is more credible, appellant's or Riley's.
The state presented reliable, credible evidence that Riley and/or her daughter were threatened with serious physical harm if Riley did not comply with appellant's orders. Force is defined in R.C. 2901.01(A) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The element of force under R.C. 2907.02(A)(2) is established if it can be shown that fear or duress overcame the rape victim's will; the requisite force need not be overt and physically brutal. State v. Fowler (1985), 27 Ohio App.3d 149,154.
A review of the record shows that a reasonable person could believe Riley's version of the events. Indeed, the state presented reliable, credible evidence of appellant's guilt and this court refuses to substitute its own judgment concerning the credibility of the witnesses. This court cannot say that on the basis of the evidence that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. The evidence was sufficient to establish that appellant exerted force or threat of force in committing the crimes of aggravated burglary, kidnapping, and rape.
Appellant further argues that the judgment was against the manifest weight of the evidence. When reviewing a claim based on manifest weight, the court of appeals sits as a thirteenth juror and in order to reverse the trial court, the court of appeals must disagree with the fact-finding resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d at 387.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id.
Appellant argues that the jury lost its way by relying solely on the testimony given by Riley. Appellant further argues that the jury's verdict was inconsistent because it found a threat to harm while acquitting appellant on Count 2, aggravated burglary with a deadly weapon.
Both Riley and appellant testified, and the jury was entitled to believe Riley and not appellant. Appellant urges this court that there is no direct evidence that a knife was used and that therefore the essential element of threat to harm was not proven. However, our review of the evidence fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. Appellant's convictions are not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY SENTENCING DEFENDANT-APPELLANT TO CONSECUTIVE SENTENCES ON RAPE AND KIDNAPPING CHARGES AS THEY ARE OFFENSES OF THE SAME OR SIMILAR IMPORT AND THEREFORE DEFENDANT-APPELLANT WAS ENTITLED TO HAVE ONE OF THE CHARGES DISMISSED.
Appellant was sentenced consecutively on Count 1, aggravated burglary; Count 3, kidnapping; and on Counts 4 through 7, rape. Counts 4 through 7 were to be served concurrently with each other but consecutively to Counts 1 and 2. Appellant argues that the trial court erred in sentencing him to consecutive sentences on the rape and kidnapping charges because the offenses are of similar import for the purposes of R.C. 2941.25(A) and (B), which provide:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses and the defendant may be convicted of all of them.
Kidnapping, as defined by R.C. 2905.04(A)(4), is an offense of similar import to rape as defined by R.C. 2907.02(A)(1). State v. Donald (1979), 57 Ohio St.2d 73, 75. However, in State v. Logan (1979), 60 Ohio St.2d 126, at syllabus, the Supreme Court adopted the following guidelines for determining if a separate animus exists in the context of a rape and kidnapping:
 (A) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions.
 (B) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.
We have reviewed the record and find that the evidence presented to the jury establishes that a separate animus existed for the crimes of rape and kidnapping committed by appellant.
First, the restraint of Riley was prolonged, lasting from approximately 2:00 a.m. to 4:00 a.m. Second, the confinement was secretive because appellant drove Riley to the vacant school parking lot where he raped her, and third, the movement was substantial because appellant spent much of the time driving around town. The kidnapping of Riley began before the rapes and continued after the rapes concluded. Accordingly, the trial court did not err in concluding that a separate animus existed for the kidnapping and the rape and sentencing appellant consecutively on these counts. Appellant's second assignment of error is not well-taken and is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT AS HE WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10, AND 16, ARTICLE I, OF THE OHIO CONSTITUTION.
Appellant argues that he was denied effective assistance of counsel because his counsel failed to make objections during testimony and because counsel failed to make a "good effort" to support a Crim.R. 29 motion for acquittal. The United States Supreme Court has established a two-step process for evaluating an allegation of ineffective assistance of counsel.
 First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052. Furthermore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.
Appellant first argues that his counsel was ineffective for failing to object during the trial to improper questioning of witnesses. Appellant asserts that the prosecutor was asking leading questions and that no objections were made by counsel. This court has held that "trial tactics that are debatable generally do not constitute a deprivation of effective counsel." State v. Edwards (Feb. 17, 1998), Clermont App. No. CA97-04-035, at 16, following State v. Phillips (1995), 74 Ohio St.3d 72, 85. "Appellant's counsel's decision not to object can be considered a trial tactic." Edwards at 16. Accordingly, we do not find that counsel's failure to object to each and every question which upon a close reading of the transcript may be considered leading rises to the level of ineffective assistance of counsel.
Appellant further argues that counsel was ineffective for failing to make appropriate objections regarding an alleged admission made by appellant to Officer McDaniel. Officer McDaniel testified that "After I transported him [appellant] to the jail, right before I left the jail I asked him if what she [Riley] was saying was true. And he said `Some of it, not all of it.'" Defense counsel did not object to this statement, but attempted to limit its effect on cross-examination. Again, trial tactics that are debatable generally do not constitute a deprivation of effective counsel. Id. Furthermore, appellant has failed to show that even if the admission would have been objected to, that the statement would have been inadmissible. Appellant was not denied effective assistance of counsel by the failure to object to this statement by Officer McDaniel.
Appellant further argues that defense counsel made only a cursory attempt at various trial motions. At the close of the state's case, defense counsel made a Crim.R. 29 motion for acquittal. Counsel gave no argument, but stated he was "just making a motion your Honor, without argument." The motion was denied. Appellant argues that counsel was ineffective for failing to renew this motion at the close of all evidence and again after the verdict of the jury.
A motion for acquittal may be granted by the trial court only where the evidence is insufficient to sustain a conviction. State v. Fields (1995), 102 Ohio App.3d 284, following State v. Apanovitch (1987), 33 Ohio St.3d 19, 23. "The trial court is required to construe the evidence most strongly in favor of the state, the party against whom the motion is directed." Id., following State v. Fuffe (1990), 67 Ohio App.3d 608.
At the close of the state's case, defense counsel's Crim.R. 29 motion was overruled by the trial court. Thereafter, the only evidence presented was testimony from appellant, which presented a different version of the events of the night of the rape. As we discussed in appellant's first assignment of error, the evidence presented by the state was sufficient to prove all elements of the crimes charged beyond a reasonable doubt. Accordingly, even if defense counsel would have renewed his Crim.R. 29 motion later in the proceedings, it is evident that the trial court would have overruled such a motion. Accordingly, we do not find that defense counsel's failure to renew the Crim.R. 29 motion rises to the level of ineffective assistance of counsel.
A review of the record in this case reveals trial counsel comported himself in a professional manner, was prepared for trial, and was an effective advocate for his client. Appellant has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by counsel's performance. Appellant's third assignment of error is not welltaken and is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.